Case: 1:22-mj-00042
Assigned to: Judge Meriweather, Robin M.
Assign Date: 2/28/2022
Description: COMPLAINT W/ ARREST WARRANT

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Joshua Rothman, being first duly sworn, hereby depose and state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been in this position since 2008.  I am currently assigned to an FBI Safe Streets Task Force. In that role, I am principally involved in narcotics and narcotics-related investigations, including narcotics investigations related to violent offenses. Since 2008, I have received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics, white-collar crimes, search warrant applications, and various other crimes. Since January of 2015, I have been assigned to work on federal narcotics investigations on the FBI Washington, D.C. Safe Streets Task Force, a violent crime and gang task force. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short-term and long-term narcotics and homicide investigations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance; conducting court-authorized Title III wiretap investigations; and preparing and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint.  It does not set forth all my knowledge, or the knowledge of others, about this matter.

3.      On February 25th, 2022, at approximately 3:55pm, Metropolitan Police Department ("MPD") Officers Bartley, Serratos, and Shoemaker, all of whom are assigned to the Sixth District ("6D") Crime Suppression Team ("CST"), were on patrol in the 4200 block of Blaine Street Northeast, Washington DC 20019 in Patrol Service Area 603. The Officers were working the evening tour of duty attired in full uniform operating a marked scout car utilizing call sign Crime Suppression Team 5 ("CST5").

4.      While on patrol, the Officers observed a black male standing on the corner wearing a grey bubble jacket, blue jeans, and pink sunglasses. Officers recognized this individual as Daniel THOMAS, based on previous interactions Officers have had with THOMAS – specifically within the Fort Chaplin Apartment Complex.  At the time they observed THOMAS, officers had knowledge of the following facts based on their employment as MPD officers and their prior interaction with THOMAS.

        a.      There was a WALES/NCIC lookout for THOMAS, because he was wanted for questioning in relation to a homicide.

b. THOMAS had advertised marijuana for sale on the Instagram social media platform – specifically by posting pictures of marijuana, posting written prices for marijuana, and by "tagging" his location as the "Fort Chaplin Apartment Complex." Specifically, THOMAS advertised that he was selling one-ounce quantities of marijuana for $125, and four-ounce quantities of marijuana for $475.[1]

 

i. THOMAS utilizes the vanity name "duemoney4200" on Instagram, and further identifies himself as "DanDue S.G.K.  Free RaRa. 4200 Blaine St. NE."

ii. I know from my investigation that THOMAS creates and publishes rap videos under the stage name "DanDue."

iii. I know from m investigation that "S.G.K." is a reference to Stain Gang – a street crew operating out of the Fort Chaplin Apartment Complex. THOMAS is known to law enforcement to be a member of that street crew.

iv. I know from my investigation that "Free RaRa" is a reference to Narada Coleman, another member of Stain Gang, who is currently incarcerated.  I know that Narada Coleman utilizes the Instagram vanity name "brazzy rara."

---

[1] THOMAS used the common street slang term "Q" for four-ounce quantities, in reference to the fact that four-ounces is a quarter of a pound.  THOMAS also advertised "KD's" for sale for $20.  I know from my training and experience that a "KD" is a seven-gram quantity of marijuana, in reference to the jersey number worn by NBA star Kevin Durant, whose nickname is "KD."

c.      THOMAS was arrested on November 24, 2020, for Carrying a Pistol Without a License AT 4371 Benning Road, Northeast.  That address is also associated with the Fort Chaplin Apartment Complex. As part of that arrest, THOMAS had an outstanding stay away order from 4371 Benning Road. The 4200 block of Blaine Street, where THOMAS was located on February 25, 2022, is less-than one block from 4371 Benning Road.

d.      Since THOMAS' arrest on November 24, 2020, MPD officers have seen him in possession of a firearm on multiple occasions.

5.      Given all of the above, Officers Bartley, Serratos, and Shoemaker exited their marked patrol vehicle to make contact with THOMAS. Upon observing the Officers and their patrol vehicle, THOMAS began walking towards a black Chevrolet Suburban. When he reached the Suburban, THOMAS entered the rear passenger compartment.

6.      When the officers reached the Chevrolet Suburban, Officer Bartley opened the back door of that vehicle to detain Defendant. The Officers asked THOMAS to exit the vehicle, but he refused. During this interaction, Officer Serratos observed a bulge inconsistent with the human anatomy in THOMAS' waistband/groin area and immediately performed a protective pat down of the area. During the protective pat down, Officer Serratos felt an object which she immediately recognized to be a firearm in the waistband area of THOMAS' pants. Officer Serratos then visually confirmed the presence of a firearm and gave the predetermined code word for the presence of a firearm. The Officers then detained THOMAS with no further incident

7.      As THOMAS was being stepped out of the backseat of the Chevrolet Suburban, Officers observed a black duffel bag for the first time.  The only other occupant of the vehicle was driver, who informed officers that he was a hired, personal driver.  When asked by the Officers, the driver stated that everything in the backseat of the Suburban, including the black duffel bag, belonged to THOMAS.

8.      The firearm recovered from THOMAS' waistband was later identified as a Glock, Model 19, 9mm semi-automatic handgun. The handgun was loaded with one (1) round of 9mm ammunition in the chamber, and fourteen (14) rounds of 9mm ammunition in the magazine. At the time it was recovered from THOMAS, the handgun was fitted with a "giggle switch," which – if functional – would render the Glock firearm capable of fully automatic fire, and would qualify as a "machine gun" as that term is defined in 26 U.S.C. § 5845(b).

9.      Subsequent to THOMAS' arrest, Officers searched the duffel bag and seized the following:

a.      Four (4) large clear plastic bags, each containing approximately one pound of green leafy substance which later field tested positive for the presence of Tetrahydrocannabinol (THC), the main psychoactive ingredient in Marijuana, a Schedule I controlled substance.

     b.    Clear plastic sandwich bags and a digital scale – both of which are known to be frequently utilized to measure and packing marijuana for distribution.

     c.    Eighty-One (81) blue in color pills, each stamped with the letter "M" on the front and the number "30" on the back, which were identified through drgus.com as containing a mixture of Acetaminophen and Oxycodone Hydrochloride. Each pill contains 30 mg of Oxycodone Hydrochloride, a Schedule II controlled substance.

I know from my training and experience that the volume of controlled substances seized in this case is consistent with distribution rather than personal use.

10.    Officers also recovered $926 in United States currency from THOMAS' person. The currency consisted of the following denominations: $20 bills (35), $10 bills (12), $5 bills (13), and $1 bills ($41). I know from my training and experience that this amount of currency in these denominations is consistent with distribution of controlled substances.



11.    Based on all of the above, I believe there is probable cause to believe that THOMAS committed the offense of Possession with the Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Marijuana and Oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(1)(D).

12.    Based on all of the above, I believe there is probable cause to believe that THOMAS committed the offense of Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Respectfully Submitted,

_____
Joshua B. Rothman
Special Agent
Federal Bureau of Investigation


Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on February 28, 2022.


_____
HON. ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE